This is our third case of the afternoon, 410-0321, Willery v. Shop-n-Save, for the appellant, Mr. Biswell, and for the appellee, Ms. Kendall. You may proceed. May it please the court, counsel, to ask to reserve time for rebuttal. There can be no question in this case that a special relationship existed between the plaintiff, my client, Mr. Willery, and the defendant, Shop-n-Save, on December 26, 2001. The plaintiff did not contest that in the trial court. There's not an issue of whether or not there existed such a special relationship based on the invite-or-invitee relationship that existed between the parties on December 26, 2001. In Marshall v. Burger King, a 2006 Illinois Supreme Court case, held that where a party can plead the existence of that special relationship, then the defendant has a duty to exercise reasonable care for the benefit of the plaintiff. That, and that alone, is a basis for reversal of the trial court's grant of summary judgment with respect to Count 1. What happened in Marshall v. Burger King was a motorist backed their vehicle into a light post, I believe, and when they pulled forward, their accelerator stuck, and their car was propelled forward, jumping over the sidewalk and driving into the Burger King restaurant. Counsel, when you say that case stands for the principle that if there's a special relationship, there is a duty, are you suggesting that the facts don't make any difference? No, I am not. I'm not suggesting those facts. The facts make a big difference, and we were able to plead and prove the existence of that relationship, and those are the operative facts. Now, if we get into the notion of whether or not there should be an exception to that general duty rule, then the facts are critically important to determining whether or not there is foreseeability. The facts of Burger King were the vehicle drove into the dining room, fatally injured, the plaintiff's decedent. On those facts, the trial court granted a motion to dismiss, and ultimately the Illinois Supreme Court said no, that is not the case. There was a business invitee relationship between the parties, and that's sufficient, therefore it's going back to the trial court. Now, in that case, the defendant urged the court to create an exception to the special relationship rule, and their basis for doing so makes our issue a little bit different, and gets into the critical nature of the facts, as Justice Turner pointed out. So the issue really becomes very fact-intensive in this case, and the issue really is whether or not the defendant, whether a nighttime parking lot attack on defendant's property, such as the kind perpetrated on Mr. Woolery, was foreseeable. And we would submit to the court that more than adequate evidence was presented to the trial court to support the conclusion that it was indeed objectively foreseeable. Certainly we're entitled to have all deference given to the non-movement party on motion for summary judgment, and it does not appear that this happened in this case. The trial court ruled that there was no prior history of assaultive behavior to make this assault foreseeable. And let's start with the premise, prior history of assaultive behavior. First, the trial court was presented with evidence of significant violent criminal activity in this parking lot at the North Grand Shop and Save. What was that evidence? Offenses such as battery, hit and runs, shots fired, several fights, several riots. Does that mean you summarized police reports that aren't in the record? Correct. Out of the 127, how many involved an assault or battery on a customer? In the year of January 27, 2000 up to December 26, 2001, our battery, there were three batteries. A robbery, hit and runs, shots fired, that type of crime. The answer to the question is a total of three, including the one that brings us here today. And those are customers? I do not know that. Well, that would make a difference, wouldn't it? Well, it may or may not make a difference. Well, it probably makes a difference to White Oaks, because I can guarantee you that there are at least three a year around Christmas time of people being assaulted and pushed around when they're taking gifts to their cars and having them taken away from them. Some of them probably go unreported because they're unsuccessful. Essentially, every single parking lot in every mall in America would have to have additional security lights and additional security forces during November and December of every year, no matter what neighborhood they were in. If what you've presented here is sufficient to find foreseeability? Well, it also goes to, you know, there is a pattern of criminal activity going on. Well, what if it's vandalism? Well, I did try and, I did draw a distinction between... Property crimes versus... Property crimes and crimes against the person, essentially. And the Marshall v. Burger King makes it clear that when we're looking at whether something is reasonably or objectively foreseeable, it doesn't have to meet the precise elements, in this case, of a given offense. And that's a little bit what the trial court was looking for, was, well, how many batteries were there? And were they against customers? Were they against bypassers? Who were they against? And were they really batteries? And what Marshall makes clear is that it's more the general character and not the precise nature and manner of the occurrence that makes something objectively foreseeable. But if there is this type of conduct going on in your parking lot with regularity, in a business' parking lot with regularity, then that is sufficient to put them in a position where it's objectively foreseeable that it is going to happen again, as it did for Mr. Buller. So that's the critical part there, is there doesn't necessarily have to be, under Marshall v. Burger King, a prior history of assaultive behavior. It has more to do with the general character, not the precise nature and manner of the occurrence that makes an occurrence foreseeable. Certainly, we can establish there was a substantial history here of criminal activity going on in and around the parking lot of a violent nature, crime directed against the person. And construing that evidence in a light most favorable to the non-moving party, the trial court could have easily concluded, particularly given the fact that we've already established the existence of an inviter-inviting relationship, that there is enough there that shop and save could have foreseen, should have foreseen, the possibility of this thing happening again, or something like it, or something worse. Yeah, but this thing happening again tends to suggest that a customer left the store and was assaulted, and you don't have anything in the record that shows that had happened before. Is your argument, is this, I'm getting too narrow, too specific, and it's generally that there had been some criminal activity outside the store? Distilled to its essence, yes, I believe so. I don't think that Marshall requires, would have required somebody to drive the vehicle. Well, Marshall basically said it was reasonably foreseeable that a car could crash through the establishment. Correct. Okay, now I'm trying to figure out what should the court in this case be looking, how would you articulate or phrase what the foreseeability should be? Okay, help me. It was reasonably foreseeable that, what? Shop and save anticipate nighttime violent criminal activity in its parking lot against employees and customers. It's reasonably foreseeable that they should anticipate something may happen to the customers? Is that? In this particular case? I know I didn't verbatim quote you back, but that's what the test here would be. In this particular time at this particular location, and the test derives from Section 344 of the Restatement of the Torts that essentially says we need to look at the property owner's past experience and the nature and the character of the business. Well, on the one hand we have the nature and the character of the business as being open extended hours with substantial violent criminal activity going on in store premises. Setting aside all the, however many other minor property crimes that are going on, there's a pretty substantial bit of criminal, of violent criminal activity directed at the person going on too. So, the nature and the character of the business is such that under the Restatement of the Torts that they should probably have some idea that this could happen again. In terms of their past experience, the past experience that the Restatement talks about as it applies to this case comes from their own internal documents where they express that first of all they hire security guards. And that can be some evidence that they anticipate criminal conduct. Second of all, they dedicate those resources, the security guards and the training that goes into them to being present in the parking lot at least 40% of their time at night. And the purpose for that is to thwart, prevent, deter criminal activity directed at customers and employees. They specifically state that they're looking, trying to look out for elderly customers on their way to their car or lone females. Make sure they're escorted to their car and watch them exit the premises, exit the property. So, that would be the rule that I would propose. That they simply are held to be deemed to foresee, forgive the clunky language, but deemed to foresee objectively what they actually foresaw in reality. And they did, in actuality, expect by virtue of their hiring training, hiring guards, training guards, putting them in the parking lot for 40% of their time at night, telling them that they should spend more time in their parking lot at night for purposes of deterring nighttime, perhaps violent, criminal activity in the parking lot. Now, and I think that that raises the point of when we're talking about foreseeability in this setting, and what Marshall points out to us, is essentially what the trial court ruled was there's no prior evidence of assaultive behavior. Well, implicit in that is a requirement that there be notice. That's an implicit element that the court is injecting into that. And that is not what Marshall v. Burger King tells us. A notice argument was advanced in Marshall v. Burger King, and the court rejected it. It said, basically, that Common F of Section 344, which discusses the landowner's past experience and the nature and character of the property, is we don't think that Common F of Section 344 of the Restatement of Torts contemplates a strict notice requirement. So to allow or permit one free assault when we've got a pattern of criminal activity going on in the parking lot, when we've got a business that's hiring security guards, putting them out there, theoretically, at night, at least on paper, telling them to watch out for nighttime, potentially violent criminal activity in the parking lot, directed at their patrons, directed at their employees, then that sort of obviates the need for any policy behind a notice requirement, in this case in particular. I'm not advocating an all-duty rule as opposed to the no-duty rule that was rejected in Marshall v. Burger King. I'm advocating here a rule on this case that says, you know, there was a lot going on in that parking lot. They had security. They had procedures in place. It was foreseeable to them. Different facts, different outcome, because that's just the nature of duty and foreseeability. But there is more than adequate here, particularly if the evidence is construed most favorably to the non-moving party, to find that there is foreseeability. But again, under Marshall, we can go back to simply the existence of an invite-or-invitee relationship and end the inquiry there, that a duty exists. And we get to see what the jury thinks of my theory. Briefly, with respect to count two, which was our voluntary undertaking theory, the court ruled that there was no breach of any duty. Well, again, construing the evidence in light of the most favorable to the non-moving party, we had an expert testify that the security guard on duty, Asa Hampton, wasn't adequately trained. That, in and of itself, is sufficient to avoid summary judgment. The defendant has their experts. We have ours. That's really a jury question to decide which expert, if any, they believe. They can certainly reject both of them and apply common sense. But the gist of it is, if there was a security guard present to deter the crime, which is the theory behind security forces everywhere, the mere presence of a uniformed security guard has a deterrent effect on crime, maybe this assault wouldn't have happened upon Mr. Woolery. And certainly our expert, Mr. Watson, testified to that fact, that this guy was inadequate. Mr. Hampton was inadequately trained. And therefore, what happened, happened. For those reasons, we would ask that this court to reverse and remand for further proceedings. Thank you very much. If it please this court and counsel, my name is Karen Kendall, and today I represent the defendant, Chauvin Sayde. This case was not decided on a motion to dismiss. It was decided on a grant of summary judgment. When we moved for summary judgment, the plaintiff had already acknowledged that the case was ready for trial. There were ten depositions filed in support of our motion for summary judgment. They included everybody who was on the premises who worked for the defendant at that time, the two cashiers, the manager, and the security guard. We filed, in support of our motion for summary judgment, the plaintiff's expert's deposition testimony. The plaintiff filed this suit contending that there was, as they do today, a history of assaultive behavior on customers that made this attack on Mr. Woolery by an underage kid who wanted a drink reasonably foreseeable. You can't find that in this record. You cannot find any support. Indeed, the plaintiff did not file any deposition testimony contradicting. There were no exhibits attached to the plaintiff's response. Plaintiff's expert said in the year before this incident, there wasn't any history of assaultive behavior on customers. There were a couple kids duking it out in the parking lot, but it didn't have anything to do with that. And the facts are clear that no one in the store knew that Mr. Woolery had even been approached by this underage youth seeking to buy beer or whatever they were trying to buy. Nor did they know anything about the incident at all until after Mr. Woolery returned to the store. Now these facts, the facts in this case as set forth in those depositions, are very similar to Rogers v. Hook and Super-X, which this court decided in 1990 that that customer, that plaintiff, also was a regular customer who came in and out of the store all the time. In fact, one of our best witnesses was the plaintiff who said, you know, I've never had any problem. I've come in here for years. I still come in here. I've never had one problem in this store except for this incident. Well, the plaintiff in the Rogers case was the same way. A regular customer lived across the street from the store, went in, bought something, came out, and was assaulted by a couple men who had been in the store and the differences they caused the disturbance so that the cashier saw their disturbance and sent them on their way. That's the only difference. This court found that the summary judgment that had been granted in Rogers was proper and affirmed on that basis. And in doing so, this court looked to a prior Fifth District decision, Taylor v. Hooker, which again involved an assault, a violent assault, at a mall. And there the court said, because the plaintiff here has tried to turn the fact that there may be shoplifting or maybe employees stealing from the store into a history of criminal assaults on customers, that that just doesn't happen. And that's what the Fifth District talked about. Just because we have security, because shoplifting occurs, doesn't mean that we've undertaken a duty to prevent any criminal assault, nor was this criminal assault reasonably foreseeable. We cited in our brief, and I won't go over them, but not only were these two summary judgments affirmed, and this, and not Burger King, is the precedent that this court should look to, but there are two cases that we cited in our brief which resulted in verdicts in favor of the plaintiff which were overturned on the basis that that was improper and the defendant owed no duty as well. Again, because it wasn't reasonably foreseeable that it was violent crime by third parties. That was the Melvin Simon case and the Oedipus Lounge case. The only case that the plaintiff... Why was Rogers more applicable for us to rely upon instead of Burger, or should it be Burger King? I'm sorry? Rogers was decided in 1990, was it? Yes. And Marshall v. Burger King was subsequent to that. Correct. And I think counsel would probably argue that while Rogers, the fact pattern is close, Marshall v. Burger King changes the impact or the persuasive authority of Rogers. I think he is arguing that, but I think that that argument does not rest on firm ground if you read the Burger King case. First of all, the court was deciding that on a motion to dismiss. So the issue was, was a cause of action stated, not was there any dispute of material fact. Here what the trial court had to decide was, we know what all the evidence is. If we send this to the jury, is there anything for the jury to decide? In Burger King, what the court was deciding was, did the defendant owe a duty? The court said, this is a business. The plaintiff was an invitee. Of course the business owed a duty. Now I admit that there are some things in the Burger King case that are possibly a little broad, but I do think when you read the entire case, the court limits the impact over and over again. And I'm sorry, I didn't mean to interrupt. No, no, that's okay. The court did find, though, that it was reasonably foreseeable that a car could crash through the premises and injure someone. I think what the court was saying is, okay. Was there any evidence? I suppose not, if it was on a motion to dismiss. But was there any finding by the court that that had ever happened before? In other words, a car had smashed through the premises and injured someone before? No, that was not present. And it was on a motion to dismiss. So there weren't any facts. And, in fact, the court said, we're not even deciding what the nature of the duty is. We just won't walk down that path that says there's no duty. So it was very – And so that's why you didn't file a motion to dismiss in this case and wait for summary judgment. Well, I think that's the good way to go always, seriously. But, you know, in Burger King, what the court said is, right or wrong, this is a high-traffic area. And they were dealing with negligence, I mean, negligent driving. And they said, hey, high-traffic area, negligent driving happens all the time. We're not going to say that you don't have to think about that, that you don't have some duty. We're not going to tell you what the duty is. We're not saying that it was breached. We're not saying there's proximate cause. We're not saying anything else. We're just saying that a business owes a duty to a customer, period. And they then, over and over again, said, that's all. Don't read this any differently. And they, instead of saying, well, we're reversing Simmons v. Aldi-Brenner, which was the case in which the car crashed into the grocery store, went to a jury verdict, and the verdict was reverse judgment in favor of the defendant, they didn't say, we're reversing that decision. It's no longer good law. They said, we're reconciling that decision because that case had facts. Our case has no facts. On the basis that the existing law does support the grant of summary judgment in this case, and on the basis that this record, indeed, is replete with facts that show there was no basis for the plaintiff's claim of reasonable foreseeability of customers being assaulted, we would ask this court to affirm the grant of summary judgment. Thank you. Thank you. Thank you. Rogers v. Hook is dissimilar in two things. One, it is dissimilar, and two, Marshall does change the persuasive value of Rogers v. Hook. Rogers v. Hook arose, I think, in Danville at a pharmacy. I kept thinking Walgreens, but a pharmacy. And in that opinion, there's minimal discussion of any prior criminal activity on the premises or near the premises. There may be one reference, a vague reference, by one clerk in her deposition testimony about something that happened at some point involving, I think it was a property crime. Obvious in distinction to our case, where we have substantial violent criminal activity at night in the parking lot. Second, I don't recall any security guard on duty in Rogers v. Hook. Third, there were no policies to protect patrons on the premises in Rogers v. Hook. Big difference in our case. I think that the precedential value of all the cases cited by defendant have to be viewed now through the prism of Marshall. And what Marshall pretty clearly says, and I think counsel and I would likely agree on, is a business owes a duty to its patrons, and that's it. Beyond that, we get into foreseeability, and we established in the trial court that there is ample evidence to find that there was a foreseeable duty owed to Mr. Waller. No policy reason, in this case, to not extend that duty to Mr. Waller. In fact, there's more evidence of a foreseeable injury than there is evidence of an unforeseeable injury. And for that reason, we would like this court to... Maybe I'm missing something. You summarize police reports. The police reports aren't in the record. Your summary of them you think is sufficient as a response to a motion for summary judgment, given the fact that your own expert said he had no knowledge of any customer being involved in any of these activities? Well, you know... I mean, I don't understand that. I'm not being flipped. If all I review is the record, I have your assertions about this activity, but what substantiates your assertions? Well, if there was a Rule 191 objection to the materials that we submitted and the manner in which we submitted them to the trial court, then the trial court would have been the place to bring that objection up. Well, it isn't a matter of an objection. I mean, I'm not sure that it's the movement's duty to tell you how to respond to a motion for summary judgment. Well, certainly there was no objection to the manner in which we did respond. But we would take the position that it was waived in this court. There was a substantive point that was in your Honor's question. Well, the testimony of your witness. He was unaware of any customer being involved in any of these criminal activities. What we were dealing with there is a discovery deposition in a hotel room, and what we had were incident reports, not police reports, from the city of Springfield. And I would submit to the court that that's simply a function of he couldn't remember at that point in time. I'm not saying one way or another where the prior incidents involved customers, but they certainly occurred on shop and safe property. And again, I think what matters here is it's the nature and the character of what's going on, not necessarily who is directed against, that is critical to this attack on the foreseeability of this duty. They actually did anticipate this kind of thing directed at customers, regardless of whether it actually occurred against customers becomes a little bit beside the point, because they knew it could and they knew it was likely to. For those reasons, we would ask for reversal. Thank you. Thank you. The matter under advisement. Recess for the day.